IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF WYOMING

FILED

11:50 am, 1/30/18

Tim J. Ellis
Clerk of Court

| | |
|---|---|
| In re ) | |
| ) | |
| WESTERN STATES, INC. ) | Case No. 17-20041 |
| ) | CHAPTER 11 |
| Debtor. ) | |

### MEMORANDUM OF DECISION ON UNITED STATES TRUSTEE'S MOTION TO CONVERT THIS CHAPTER 11 CASE PURSUANT TO 11 U.S.C. § 1112(b)

This matter is before the court on the United States Trustee's Motion to convert this case from Chapter 11 to Chapter 7, and Debtor's objection. The court took this matter under advisement at the hearing's conclusion and reserved ruling on the previously litigated Motion for Relief from Stay.[1] Avana Capital, LLC and Avana Fund I, LLC (Avana) and the United States Small Business Administration join the U.S. Trustee's Motion. The U.S. Trustee requests the court convert Debtor's chapter 11 bankruptcy case, for cause, under § 1112(b). He alleges: (1) Debtor failed to timely file monthly operating reports; and, (2) there is a substantial or continuing loss to or diminution of the estate with no reasonable likelihood of rehabilitation. Avana alleges Debtor's plan lacks good faith. The SBA asserts "gross mismanagement of the estate" as an additional basis to convert. Debtor urges the court to allow creditors the ability to vote on the proposed plan as it believes it will generate sufficient cash flow or liquidation value to pay unsecured creditors whereas a sale of the property would yield nothing for unsecured creditors.

**Jurisdiction**

This Court has jurisdiction under 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).[2] Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

---

[1] The parties stipulated to incorporating all evidence testimony from the Evidentiary Hearing on Motion for Relief from Stay into the record of the U.S. Trustee's Motion to Convert. (D.E. 240/248)
[2] Unless otherwise noted all statutory references are to the United States Code, Title 11.

**Facts**

1. Background

This case evolved as the parties made a cooperative effort to achieve the best result in this matter. The patience in timing allowed Hotel operations to continue after re-instatement of the reservations systems, amendments to disclosure statements in response to objections, and scrutiny of sales offers for the Hotel. Unfortunately, the Hotel's operations have not improved and Debtor has not finalized purchase offers.

Debtor owns and operated the Ramada Plaza Hotel in Casper, Wyoming. Debtor and Avana entered into a loan agreement on January 31, 2014, for $3,083,000.00. As of the Petition date, Debtor was indebted to Avana for $2,810,209.47.[3] Debtor granted Avana a security interest in the Hotel as collateral securing the note. Debtor defaulted on its loan obligations by failing to timely make pre-petition payments to Avana. Subsequent to filing for bankruptcy protection, Debtor has not paid any monthly or interest payments to Avana.

The SBA has a second mortgage on the Hotel property for $1,703,000.00, secured by a mortgage on the Hotel property and a security agreement for the furniture, fixtures, and equipment. SBA agreed to subordinate its liens to those of Avana by a Third Party Lender Agreement in August 2014. Debtor defaulted on its obligation to the SBA. Debtor also defaulted by failing to pay certain state and federal taxes, causing liens to be placed against the property.

Prior to Debtor filing for bankruptcy protection, Avana filed a *Complaint for Appointment of a Receiver* in the Seventh Judicial District Court in Natrona County, Wyoming. Debtor failed to answer Avana's Complaint. The District Court entered an *Order Granting*

---

[3] This amount included a reserve balance of $401,132.59, which AVANA could have applied to pay off the loan, but which is now being used to pay for certain costs and repairs to the Hotel.

*Default Judgment and Appointment of Receiver* appointing CRU Real Estate Group as receiver on January 18, 2017.

Two weeks prior to filing its bankruptcy petition, Debtor executed an agreement with Itria Ventures. In exchange for an interest in future receivables from Hotel operations, Debtor received up to $300,000.00.

There are major issues with the Hotel's operation and physical structure. This includes, but is not limited to: 1) no heat or air conditioning in the atrium and terrace area; 2) leaks in the pool area roof, executive office, front desk, kitchen, and main ballroom; 3) the alcoholic beverages cooler not functioning properly; 4) an obsolete internet system; 5) kitchen equipment needing repair or replacement; and, 6) replacement of a circulation pump and boiler. The costs to make these repairs were estimated to be just under $300,000.00.[4] Mr. Mann believes he can have the repairs done for substantially less. Upon the parties' stipulation, the court authorized Debtor to use pre-petition funds to repair the HVAC system. According to Mr. Senft's testimony on January 18, 2018, this was completed.

A Property Improvement Plan exists requiring certain upgrades to the rooms at an estimated cost of $276,000.00. Steve Senft, the receiver, testified the property's overall condition was "very tired," which has a negative impact on customers. Although the Property Improvement Plan requires certain upgrades, Mr. Mann insists the Improvement Plan is not mandatory but negotiable. The Hotel needs a substantial investment to fund the capital improvement to allow the Hotel to compete in the Casper market. Additionally, there are multiple rooms out-of-order with an estimated cost to repair for customer use at $5,000.00.

---

[4] Receiver's Supplemental Declaration, reflects his opinion that it will cost $60,000 to $70,000 in capital expenditures "in order to run efficiently during the winter months."

During the first months of 2017, Debtor lacked access to the Ramada central reservation system and third-party reservations system, due to its failure to pay franchise fees. Access to the central reservation system was restored in June 2017, and access to the third-party system by July 2017. Debtor asserted it would take two months of fully operational reservations systems to reflect the impact on the Hotel's cash flow. The court's review of the docket reflects the net operating losses for September (-$26,000), October (-$32,000), and November 2017 (over -$50,000). Although Debtor blames the lack of revenue, in part, on the lack of access to the reservation systems, the two-month period reflects the Hotel's access to the system cannot be the primary reason the Hotel continues to operate at a loss.

In August, due to Casper's proximity to the total solar eclipse, Mr. Senft testified that the entire Casper hotel/motel market was running at about 90% capacity. However, the Hotel did not capitalize on the special event, as sales management previously negotiated a lower contract price, locking it into the lower rate for this "one-time event." Mr. Senft testified that the Hotel did see an increase in business in July and August, but still did not realize a positive net operating income. Mr. Senft also pointed out the proposed plan does not provide for payments to Avana or SBA and the property is not producing sufficient revenue to make the proposed plan payment.

2. Value

There were Hotel valuations presented at the hearings. Debtor originally valued it at $3,300,000.00. This allocated $3,000,000.00 to the real property and $300,000.00 as inventory. During the initial Disclosure statement hearing, Mr. Mann asserted the value was $3,800,000.00. Carter Allen, an appraiser retained by Avana, valued the property at $3,500,000.00, but testified the Hotel required maintenance, following the Property Improvement Plan to raise the Hotel to Ramada standards. Mr. Allen testified the Hotel needs to replace wall coverings, boilers and

improve the parking area and exterior. He estimated the cost of these improvements to be $1,800,000.00 and would be borne by a buyer. He valued the non-real estate property, *i.e.*, furniture, fixtures, artwork and equipment at $600,000.00. Debtor provided the 2017 Natrona County Property Tax and Assessment Information assessing the building at $3,741,162.00, and the land at $22,350.00, for a total value of $4,003,512.00.

Debtor retained Hunter Realty Associates as a real estate broker to market and sell the Hotel. Hunter Realty initially listed the property at $4,500,000.00, but did not expect it to sell at that price after physically inspecting the property. Debtor rejected formal offers of $3,200,000.00 and $3,800,000.00. Mr. Mann testified he believed the property to be worth more than $4,000,000.00. Mr. Mann explained that he observed more traffic and cars in parking lots around Casper, indicating an increase in occupancy and interpreted by him that the economy was rebounding. However, because of the ongoing deterioration to the Hotel and the local market, the real estate professionals opined it is unlikely to receive another offer close to $3,800,000.00.[5]

3) Disclosure Statements/Plan

Debtor filed its initial Disclosure Statement on May 25, 2017. Ramada Worldwide, Inc., the Small Business Administration, Itria Ventures, and Avana objected. After hearing, the court denied approval of the initial Disclosure Statement. Subsequently, Debtor filed an Amended Disclosure Statement on August 21, 2017. Avana again objected. The hearing was convened on November 14, 2017. Debtor indicated that it would amend its Disclosure Statement to resolve Avana's objections. Debtor filed a Second Amended Disclosure Statement, to which Avana has again objected. The hearing occurred on January 18, 2018.[6]

---

[5] At the most recent amended disclosure statement hearing, Ms. Barbara Cox of Hunter Realty testified she thought the property could likely sell for $3,000,000.00 to $3,200,000.00, but would not sell at $4,000,000.00.

[6] At the conclusion of the hearing for approval of the Second Amended Disclosure Statement, the court took the matter under advisement.

The primary objections were the lack of support for the projections in the disclosure statement and the feasibility of the plan. Avana also points out that Debtor's accountant has modified various accounting statements the receiver prepared causing delays in getting accurate accounting information to Hunter Realty for sale purposes.

4) Operations

Debtor must file monthly operating reports until plan confirmation and a quarterly report after confirmation. Debtor must file the reports by the 21st day of the month following the reporting period.[7] At hearing, Debtor acknowledged it did not file the monthly operating reports on a timely basis. The court's review of the docket reflects Debtor has not filed an operating report within the time required. Even after the hearing and Debtor's acknowledgment of tardy filings, Debtor's monthly operating reports have continued to be untimely.

Mr. Senft testified the Hotel has operated at a loss since the receiver assumed operations prior to the bankruptcy case filing.[8] As of the hearing date, he testified there was $213,000.00 in the bank account, which includes $85,000.00 pre-petition funds. Mr. Senft stated he retains about $70,000.00 in the bank account for payroll, utilities, taxes and the franchise fees. The revenues continue to decline as the property enters the winter season. According to Mr. Senft, compared to 2016, revenues are down about forty percent. The Debtor's financials do not include interest or principal payments to Avana nor SBA as the receiver has not been making those payments.

Mr. Senft, testified at the evidentiary hearing on Avana's motion for relief from stay on August 10, 2017, explaining one large expense that would be incurred if the Hotel is shut down,

---

[7] *Operating Guidelines and Reporting Requirements for Debtors in Possession and Chapter 11 Trustees*. U.S. Dept. of Justice. Page 3-4 of 6. (Rev. 1/13/13). https://www.justice.gov/sites/default/files/ust-regions/legacy/2013/01/10/ch11_guidelines_reporting_req.pdf

[8] According to the receiver, the July Profit and Loss Statement showed positive net income. However, had Debtor made payments on its debts to Avana, SBA, and Itria, there would have been a negative net income.

would be a fire safety issue. As the property was built in 1968, certain governing fire suppression building code requirements were "grandfathered." Mr. Senft was aware that if the Hotel ceased operations, a purchaser would be required to bring the system up to current code.

As stated previously, Avana filed a motion for relief from the automatic stay, which this court currently has under advisement after the presentation of evidence and testimony at trial. Avana alleged that cause exists for the court to grant relief from stay. Avana alleges there is no chance to reorganize as there is not enough cash flow to make the secured creditors' payments and continue to operate the Hotel. Avana also alleges there is no equity in the property.

**Discussion**

A bankruptcy court may convert or dismiss a Chapter 11 case for cause, "whichever is in the best interest of the creditors and the estate."[9] Section 1112(b) provides, in paragraph (4), a nonexclusive list of grounds which may constitute "cause" for dismissal or conversion. Among the enumerated grounds giving rise to "cause" in § 1112(b)(4) are substantial or continuing loss to or diminution of the estate and the absence of a reasonable likelihood of rehabilitation, gross mismanagement of the estate, and an unexcused failure to satisfy timely any filing or reporting requirement. The Movant, along with the joining parties, cited to these grounds as the primary basis for seeking dismissal of Debtor's bankruptcy case. The list is not exhaustive. Courts may find cause for other equitable reasons.[10] Bad faith is not an enumerated ground for dismissal under Section 1112(b)(1). Nonetheless, that subsection requires a court to dismiss or convert a chapter 11 case upon a showing of "cause;" and, lack of good faith in filing a chapter 11 case constitutes "cause" under Section 1112(b)(1).[11]

---

[9] § 1112(b)(1).
[10] *In re Whetten*, 473 B.R. 380, 382 (Bankr. D. Colo. 2012).
[11] *In re Platte River Bottom, LLC*, No. 13-13098 HRT, 2016 WL 241464, at *6 (Bankr. D. Colo. Jan. 19, 2016).

The party seeking dismissal or conversion under § 1112 bears the burden of proving, by a preponderance of evidence, that "cause" exists.[12] If Movant establishes cause, § 1112 provides that the court *shall* convert or dismiss, unless there are "unusual circumstances" that establish that such relief is not in the best interests of creditors and the estate.[13] Thus, once Movant demonstrates cause, the burden shifts to Debtor to prove "unusual circumstances."[14]

1. <u>Failure to Satisfy Timely Filing and Reporting Requirements</u>

Debtor failed to timely file its reports. Mr. Mann explained that it was difficult to complete the financial reports because the receiver is the party with access to all of the relevant information. Filing late monthly reports does not " 'satisfactorily explain or excuse failure to satisfy [a debtor's] duties as a chapter 11 debtor.' Filing catch-up reports is akin to locking the barn doors after the horses have already gotten out."[15] The Bankruptcy Court for the District of Colorado found that the reporting requirements provide the primary means for monitoring a debtor's compliance with the Code's requirements and serve as a test for a debtor's ability to reorganize. Noncompliance in filing the reports is not a mere technicality. "Habitual non-compliance calls in to question a debtor's ability to effectively reorganize."[16]

This court previously found that repeated late filed monthly operating reports is cause: "A debtor in bankruptcy must comply with the reporting requirements so that creditors and the court may determine whether the bankruptcy case is being properly administered while a debtor enjoys the benefits of the bankruptcy process."[17] The receivership is operating the Hotel at this

---

[12] *Id.*
[13] 11 U.S.C. §§ 1112(b)(1), (b)(2).
[14] *In re Whetten*, 473 B.R. 380, 382 (Bankr. D. Colo. 2012).
[15] *In re Whetten*, 473 B.R. at 383 (citing *In re Landmark Atlantic Hess Farm, LLC,* 448 B.R. 707, 716–17 (Bankr. Md. 2011)).
[16] *In re Whetten*, 473 B.R. at 383.
[17] *In re McTiernan*, 519 B.R. 860, 866 (Bankr. D. Wyo. 2014).

time, but the need to monitor the case is still of vital importance. Debtor failed to satisfy its duty to timely file operating reports. This recurring behavior shows habitual non-compliance.

    2. <u>Substantial or Continuing Loss to or Diminution of the Estate and the Absence of a Reasonable Likelihood of Rehabilitation</u>

Section 1112(b)(1) provides that a bankruptcy court may convert or dismiss a case when there is continuing loss to or diminution of the estate and an absence of a reasonable likelihood of rehabilitation. The two components that courts test are whether (1) after the commencement of the case, the debtor continues to experience a negative cash flow, or alternatively, declining asset values; and, (2) is there any reasonable likelihood that the debtor, or some other party will be able to stem the debtor's losses and place the debtor's business enterprise back on a solid financial footing within a reasonable amount of time.[18]

    a. *Declining Asset Value or Negative Cash Flow*

Movant argues that based upon Debtor's own financial information and operating history, the estate is diminishing as the operating and administrative expenses exceed its cash flow. In addition, the Hotel is falling into greater disrepair.

Debtor's Profit and Loss Statements show insufficient income, before expenses for the business to be profitable. July and August show a positive net ordinary income, but after accounting for interest accruing on the Avana loan, there is an overall negative net income. The final net income figures also do not account for the loan payments that Debtor is not making to Avana, Itria or the SBA during the bankruptcy. Debtor continues to incur post-petition operating and administrative expenses driving the Hotel further into debt. The accumulating interest on Debtor's secured debt also increases the bankruptcy estate's debt.

---

[18] *In re Bartmann*, 310 B.R. 663 at *4-*5 (B.A.P. 10th Cir. 2004) (citing 7 Collier on Bankruptcy ¶ 1112.04[5][a] (Lawrence P. King ed., 15th ed. rev. 2001)).

As stated above, Debtor's Profit and Loss Statements filed with September, October and November's Operating Report, show a net loss for each reporting period. Mr. Senft, the receiver, stated September is a slower month than the summer months and occupancy further decreases through the winter months. The Hotel continues to have trouble from the lack of maintenance on the facilities, but it is operating with the advantage of a full online reservation system. Negative cash flow and an inability to pay current expenses as they come due, satisfies the substantial loss or diminution of the estate for purposes of Section 1112(b).[19]

Movant may also establish diminution of the estate by showing "declining asset values."[20] The Hotel's condition continues to deteriorate. This continual decline is affecting the Hotel's sale value. At the most recent hearing, Marilyn Cox, of Hunter Realty Associates, Inc., testified she expects offers on the property will range between $2.5 million and $3.2 million dollars, with a closing to occur within three to four months of an offer's acceptance. The declining listing price, initially listed in the $4 million range, is due to the lack of the Hotel generating profitable revenue and the necessary repairs to the property. Movant carried the burden of establishing there is a decline in the value of the property and negative cash flow.

      b. *Reasonable Likelihood of Rehabilitation*

The second part of the test is whether there is any reasonable likelihood that Debtor or another party, will be able to stem its losses and place the Hotel back on a solid financial footing within a reasonable amount of time. "[B]ecause the statute is written in the conjunctive, both requirements must be satisfied."[21] The "reasonable likelihood of rehabilitation," is not the same

---

[19] *In re McTiernan*, 519 B.R. at 866.
[20] *In re Vaughan Co., Realtors*, No. 11-10-10759, 2013 WL 2244285, at *6 (Bankr. D.N.M. May 21, 2013) (citing *In re Wahlie*, 417 B.R. 8, 11 (Bankr. N.D. Ohio. 2009)).
[21] *Morreale v. 2011-SIP-1 CRE/CADC Venture, LLC*, 533 B.R. 320, 323 (D. Colo. 2015) (citing *In re Miller,* 496 B.R. 469, 479 (Bankr. E.D. Tenn. 2013)).

as reasonable likelihood of reorganization. Rehabilitation is a more demanding standard that does not include possibility of confirming a liquidating Chapter 11 plan.[22] Rehabilitation means to reestablish a business.[23] Rehabilitation signifies something more, such as "to put back in good condition" or "to re-establish on a firm, sound basis."[24] It contemplates the successful maintenance or reestablishment of a debtor's business operations.[25]

Debtor intends to fund the plan through ongoing Hotel operations. In the alternative, Debtor proposes selling the property. As previously discussed, Debtor, under operation of the receiver, has yet to generate income sufficient to fund the plan. Debtor's additional income sources are unknown. There is no evidence any party can get Debtor back on a solid financial footing within a reasonable period.

Mr. Mann explained, based upon the STR Reports, the Hotel has the ability to operate at the level of its comparable market, and with those projected revenues, can sufficiently provide for the operation of the Hotel.[26] However, the reality of the actual revenue for an average room for the Hotel over 2017 was substantially below the comparable hotels in Casper. Mr. Senft, testified that to generate more income, the room rate was lowered, to increase capacity and revenues. Even with those actions, the Hotel failed to pay its monthly post-petition expenses. Nothing in the record indicates a strategy for increasing the Hotel's revenue to the level of comparable hotels. All parties hope that the oil and gas market will rebound, but there is no evidence of a drastic boost in the economy. Without such, there does not appear to be any reasonable likelihood of rehabilitation.

---

[22] *In re Brutsche*, 476 B.R. 298, 301 (Bankr. D.N.M. 2012).
[23] *In re Hyatt*, 479 B.R. at 886 (citing *In re Brutsche,* 476 B.R. at 302 (citations omitted); *accord, In re ARS Analytical, LLC,* 433 B.R. 848, 862 (Bankr. D.N.M. 2010)).
[24] *In re ARS Analytical, LLC,* 433 B.R. at 862 (citing *In re The V Companies,* 274 B.R. 721, 725 (Bankr. N.D. Ohio 2002)).
[25] *Id.*
[26] Monthly STR Reports. Avana's Exhibits 53 and 54, respectively.

3. Failure to effectuate a plan

Under Section 1112(b)(2), the bankruptcy court may dismiss or convert a Chapter 11 case if the debtor is unable to effectuate a plan, which means that the debtor lacks the ability to formulate a plan or to carry one out.[27] Dismissal for inability to effectuate a Chapter 11 plan is appropriate where a debtor's failure to produce an acceptable plan, after a reasonable time, indicates its inability to do so, whether the reason for the inability is its poor financial condition, structure of claims against it, or some other reason.[28] For the reasons discussed in this court's order denying approval of the disclosure statement, the court does not believe Debtor will be able to effectuate a plan given the on-going failure to provide creditors with the cash requirement needed to operate the property and pay its secured debts. Movant carried its burden that Debtor fails to show evidence it may effectuate a plan.

4. Gross Mismanagement/Bad Faith

Both claims of mismanagement and lack of good faith center on Debtor rejecting offers to purchase the Hotel. After the potential buyers' review of the property and revenues, each potential purchaser lowered the offer price based on the need to invest substantial capital upon purchase. Debtor declined to accept the lower offers.

Having reviewed the record and Mr. Mann's testimony, the court does not find his rejections give rise to mismanagement or bad faith. Mr. Mann stands firm in his genuine belief that the economy is turning around and that the Hotel can become a profitable enterprise. Unfortunately, the Hotel's actual net profits have not generated enough to pay its actual post-petition expenses. The monthly STR reports, and the real estate professionals' and receiver's testimony do not support Mr. Mann's beliefs. Based on the actual revenues and the revenues

---

[27] *Hall v. Vance*, 887 F.2d 1041, 1044 (10th Cir. 1989).
[28] *Id.*

generated by comparable hotels in Casper, Wyoming, the economy is not rebounding as quickly as Mr. Mann hopes or believes.

This court provided Debtor many opportunities, to the detriment of the estate and creditors, to provide realistic projections, supported by documentation, and/or the opportunity to liquidate the Hotel in order to continue this Chapter 11 bankruptcy case. Avana requested relief from stay. The court took the matter under advisement, and to Avana's frustration, has not entered the order, giving Debtor time to file a disclosure statement that the court may approve.

Accordingly, for these reasons, "cause" for dismissal or conversion exists within the meaning of Section 1112(b). The court finds the evidence establishes cause because of Debtor's failure to timely file monthly operating reports, a continuing loss to or diminution of the estate and an absence of reasonable likelihood of rehabilitation, and an inability to effectuate a plan.

5. <u>Exception to mandatory conversion or dismissal</u>

With one exception, the Court must convert or dismiss the chapter 11 case . . . if it finds, as it does, that there is cause to do so.[29] That exception is expressed in § 1112(b)(2):

> (2) The court may not convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter if the court finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate, and the debtor or any other party in interest establishes that—
>
> (A) there is a reasonable likelihood that a plan will be confirmed ... within a reasonable period of time; and
>
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor *other than under paragraph (4)(A)*—
>
> (i) for which there exists a reasonable justification for the act or omission; and
>
> (ii) that will be cured within a reasonable period of time fixed by the court.[30]

---

[29] *In re Brutsche*, 476 B.R. 298, 306 (Bankr. D. N.M. 2012).
[30] § 1112 (b)

The court finds the exceptions expressed in § 1112(b)(2) do not exist. Waiting for the oil and gas market to rebound or tourist seasons to increase to the point the Hotel is able to provide a positive net income is speculative. As much as the court does not want to "pull the rug out from under" Debtor, no exception is applicable.

Movant met its burden that cause exists to grant its Motion to Convert. Debtor did not refute the evidence. Therefore, the court shall grant the U.S. Trustee's Motion to Convert and establish a deadline for the appointed Chapter 7 Trustee to evaluate the options, including but not limited to, whether to operate the business or liquidate if there are assets for the estate's benefit. Additionally, during the time provided to allow the Chapter 7 Trustee to evaluate the bankruptcy estate, the court shall continue the appointment of the receiver.

This memorandum of decision constitutes the court's findings of facts and conclusions of law. A separate order shall be entered.

BY THE COURT:

_Cathleen D. Parker_ 1/30/2018
Cathleen D. Parker
United States Bankruptcy Court Judge